IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| DIAGNOSTIC IMAGING SERVICES, INC. d/b/a High Tech Medical Imaging, | ) ) ) ) | CASE NO: 05 B 55604 |
| Debtor. | ) ) ) | HONORABLE SUSAN PIERSON SONDERBY U.S. BANKRUPTCY JUDGE |

## FINAL ORDER GRANTING DEBTOR'S MOTION FOR AN ORDER GRANTING AUTHORITY TO USE CEDAR BOULEVARD LEASE FUNDING LLC'S CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION

This matter came on for hearing on December 21, 2005, upon Debtor's motion for an Order Granting Authority to Use Cedar Boulevard Lease Funding LLC's Cash Collateral and Providing Adequate Protection (the "Motion"); due and proper notice of the Motion having been given pursuant to Bankruptcy Rule 4001(c)(1) to counsel for Cedar Boulevard Lease Funding LLC ("Cedar" or "Lender"), the United States Trustee, the Debtor's twenty largest unsecured creditors, all entities that filed a UCC financing statement asserting a security interest in Debtor's property and all entities who have requested notice in this case; the Court having considered the Motion and exhibits attached thereto; the Court having held a preliminary hearing with respect to the Motion on October 19, 2005 pursuant to Bankruptcy Rule 4001(c), and the Court having entered on that date an interim order granting Debtor limited authority to use cash collateral; the Court having considered the testimony presented by the Debtor and considered the statement of counsel for the Debtor, Cedar and all other parties who appeared at the hearing, the Debtor and Cedar stipulate and the Court finds as follows:

A.      On October 14, 2005, ("Petition Date"), Diagnostic Imaging Services, Inc. ("Debtor") filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy

337566.4 051533-36761

Code ("Code"). The Debtor is currently operating its business as Debtor-in-Possession pursuant to §§1107 and 1108 of the Code.

B. Debtor and Lender, as assignee and successor in interest to DVI Financial Services, Inc., ("DVI") are parties to (a) that certain master equipment lease number 2241 dated as of April 12, 1999 ("1999 Lease Agreement"), (b) all equipment schedules associated with the 1999 Lease Agreement (collectively, with the 1999 Lease Agreement, the "1999 Lease Documents"), (c) that certain security agreement dated as of April 12, 1999 ("1999 Security Agreement"), (d) that certain master lease agreement number 3896 dated as of April 25, 2003 ("2003 Lease Agreement"), (e) all equipment schedules associated with the 2003 Lease Agreement (collectively, with the 2003 Lease Agreement, the "2003 Lease Documents"), (f) that certain master security agreement dated as of April 25, 2003 ("2003 Security Agreement"), and all amendments, attachments and documents ancillary to the Master Security Agreement (collectively, with the 2003 Security Agreement, the "2003 Security Documents"). For purposes of this Order, the 1999 Lease Documents, the 1999 Security Agreement, the 2003 Lease Documents, and the 2003 Security Documents shall be referred to, collectively, as the Pre-Petition Loan Documents".

C. As part of the 1999 Security Documents, the Debtor granted a security interest in, and lien on "all existing and after acquired accounts, chattel paper, documents, equipment, goods, instruments and inventory of [Debtor] and all proceeds thereof [.]"[1]

D. As part of the 2003 Security Documents, the Debtor granted a security interest in, and lien on, all of Debtor's right, title and interest in and to all present and future personal property of the Debtor, including, without limitation, the following:

---

[1] The definition is specified at considerable length in article 1.4 of the 1999 Security Agreement.

(a) accounts, including, without limitation, health-care-insurance receivables (the "Accounts"), (b) chattel paper, (c) instruments, (d) inventory, (e) investment property, (f) documents (g) letter-of-credit rights, (h) books and records including, without limitation, (i) minute books, ledgers and records indicating, summarizing or evidencing the Accounts (ii) information relating to [Debtor's] business operations or financial condition and (iii) all computer programs, disk, or tape files, printouts, runs and other computer-prepared information and equipment containing such information; provided, however, that confidential patient records are not included in this grant, except to the extent permitted by law, (i) deposit accounts (j) general intangibles, including, without limitations, payment intangibles, (k) equipment, (l) goods, (m) fixtures and (n) income, proceeds and products of any of foregoing.

E.     In order to perfect the liens and security interests described above in paragraphs C and D ("Pre-Petition Collateral"), Lender filed UCC-1 financing statements with the appropriate office in the states where such filings are necessary in order to perfect the foregoing liens and security interests.

F.     As of the Petition Date, pursuant to the Pre-Petition Loan Documents, Cedar asserts that it held, and continues to hold, valid and perfected first priority liens and security interests ("Pre-Petition Liens") in the Pre-Petition Collateral, except insofar as pursuant to non-bankruptcy law such liens were junior to any valid and properly perfected liens in favor of other entities.

G.     Cedar is willing to consent to the Debtor's use of accounts receivable, which constitute Cedar's cash collateral ("Cash Collateral"), only on the terms and conditions provided in this Order.

H.     The Debtor admits that as of the Petition Date, under the terms of the Pre-Petition Loan Documents, (i) the Debtor was indebted to Cedar, without defense, counterclaim, recoupment or offset of any kind, in the principal amount of no less than $3,295,765.00, subject to reconciliation and audit by Debtor, and late fees and interest, if any, plus any additional interest due, taxes, costs, expenses and other charges thereon in respect of loans, advances and

other financial accommodations made by the Pre-Petition Loan Documents ("Pre-Petition Obligations") and, (ii) the Pre-Petition Obligations are secured by valid, enforceable and properly perfected first priority liens on and security interests in the Pre-Petition Collateral, as defined in the Pre-Petition Loan Documents.

I.   Cedar asserts that it does not control the operations of the Debtor.

J.   The entry of this Order will preserve and maintain the value of the Debtor's assets, will minimize disruption of the Debtor as a going concern, will increase the possibility for successful reorganization and is in the best interest of the Estate. The Debtor does not believe it could continue to manage and operate its business without using the Cash Collateral of Cedar. Accordingly, the Debtor has requested that Cedar allowed it continued use of its Cash Collateral.

K.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This cause is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The notice which the Debtor provided of the hearing on this Motion was sufficient and appropriate under the circumstances of this case and satisfies the requirement of Bankruptcy Rule 4001.

**IT IS HEREBY ORDERED** as follows:

1.   **Preamble and Defined Terms.** The foregoing stipulations and findings are hereby restated (and the Debtor confirms the representations made in said stipulations) at this point and incorporated herein by reference, and the Debtor and Cedar hereby consent and stipulate to entry of this Order. Words used herein, whether capitalized or not, shall be construed in accordance with the definitions provided and set forth in the Pre-Petition Loan Documents, as supplemented by the definitions set forth in the Code, including without limitation, the definitions contained in §101 of the Code.

2. **Authorization to Use Cash Collateral.** The Debtor is hereby authorized to use the Cash Collateral of Cedar, consisting of pre and post-petition accounts receivable of the Debtor, in the ordinary course of business only, in accordance with the budget attached hereto as Exhibit A, provided, however, that the expenditures of the Debtor for any line item may exceed the amount budgeted for that line item by a factor of no more than ten percent (10%) of the budgeted amount. The Debtor may carry over any unused portion of the actual expenditures budgeted for a particular line item to a subsequent time period for that line item. In addition, Debtor may spend up to $10,000 at any one time to make expenditures not otherwise provided for in the foregoing budget, for emergency repairs to or maintenance of equipment in order to avoid or minimize disruption in service or to fulfill its contractual obligations. Debtor shall promptly notify Cedar of any such expeditions. Cedar's Cash Collateral shall be used solely for the purpose of operating and maintaining the Debtor's business and as set forth in this Motion. In the event that the Debtor seeks to modify the budget amounts contained on Exhibit A, it may submit to the undersigned counsel for Cedar in writing a request for modification. Such modification shall be effective seven days after receipt unless Cedar objects to such modification in writing before the seventh day following receipt by Cedar. Debtor's requests to modify budget amounts shall be submitted by facsimile and overnight mail to John Vandemoore, 722 Lathrop Avenue, River Forest, Illinois 60305 (fax no. 708 366 7325) and Karen Goodman (fax no. 312 275 7570). The Debtor is authorized to use Cash Collateral of Cedar pursuant to the terms of this Order during time periods subsequent January 14, 2006 in accordance with budgets to be submitted by the Debtor to Cedar from time to time. Such budget shall be effective seven days after receipt by overnight mail and facsimile to Cedar and by facsimile to Karen Goodman unless Cedar objects to such budget in writing before the seventh day following receipt by Cedar.

3. **Adequate Protection Payments**. As partial adequate protection for any post-petition diminution in the value of Cedar's interest in the Pre-Petition Collateral, including without limitation for any diminution in value caused by the Debtor's use of the Pre-Petition Collateral, including Cash Collateral as such is term is defined in Code 363(a), Cedar is hereby granted valid, binding, enforceable and perfected replacement liens upon all property of the Debtor's Estate and all proceeds, products, rents and profits thereof, upon which Cedar had valid and perfected pre-petition liens and security interests, to the extent of and with the same priority as its valid and perfected pre-petition liens (collectively, the "Replacement Liens" or "Adequate Protection Liens), subject only to senior valid, binding, enforceable and perfected liens and security interests existing on the Petition Date against such assets in favor of entities other than Cedar and the Carve-Out, as defined below. To the extent that the foregoing adequate protection is deemed inadequate, Cedar is also granted an allowed administrative claim in accordance with §507(b) of the Code having the priority of the right payment as set forth in §507(b) of the Bankruptcy Code, but subject to the Carve-Out. As additional adequate protection, the Debtor is authorized to pay and Cedar is entitled to receive the monthly payments as provided for in this Order and Exhibit A hereto.

4. **Replacement Liens for Harris Bank**. As partial adequate protection for the lien it asserts against the assets of the Debtor by reason of certain loan transactions with the Debtor's sole shareholder as guaranteed by the Debtor, Harris Bank of Cary Grove ("Harris") is hereby granted valid, binding, enforceable and perfected replacement liens upon the Debtor's assets to the extent and to the same priority as its valid and perfected pre-petition liens.

5. **Order is Security Agreement**. This Order shall be deemed to be and shall constitute a security agreement under the applicable provisions of the Illinois Uniform

Commercial Code ("UCC") in effect from time to time. The security interest and liens granted to Cedar by this Order shall be deemed perfected upon entry of this Order without the necessity of filing or recording by any person of any documents or other instruments otherwise required to be filed under applicable non-bankruptcy law for the protection of security interest or liens, with such validity and perfection being binding upon a successor or any subsequently appointed trustee in any proceedings under any chapter of the Code, and upon any and all of the creditors of the Debtor who have extended or may hereafter extend credit to the Debtor or who assert a claim of any nature or any manner whatsoever in this bankruptcy case or any superseding bankruptcy case of the Debtor, whether or not notice of the filing of this bankruptcy case has been filed in any county, parish or any political or administrative subdivision in which the assets of the Debtor are or may be located. Notwithstanding the foregoing, the Debtor shall execute any other security agreements and supporting documents if requested to do so by Cedar. The Debtor-in-Possession shall cooperate with Cedar in executing such other documentation, including without limitation, new promissory notes, as Cedar deems reasonably necessary to effectuate the terms of this Order.

6.    **Carve-Out.**  Notwithstanding the liens and security interests granted herein to secure the Pre-Petition Obligations, the Cash Collateral maybe used by the Debtor if sufficient funds are not otherwise available from the Debtor's Estate, to pay the statutory fees of the Clerk of the Court and United States Trustee pursuant to 28 U.S.C. Section 1930(a), and under this Order in aggregate, to pay up to $200,000.00 for the following administrative expenses ("Carve-Out"):

a. A retainer in the amount of $100,000.00 for counsel retained by the Debtor pursuant to Order of this Court, which may be paid in the ordinary course of business as authorized pursuant to the Orders of this Court:

b. A retainer in the amount of $75,000.00 for turn-around management consultants retained by the Debtor pursuant to Order of this Court, which may be paid in the ordinary course of business as authorized pursuant to the Orders of this Court; and

c. A retainer in the amount of $25,000 for counsel for an Official Committee of Unsecured Creditors ("Committee"), if any, appointed pursuant to Order of this Court, which may be paid in the ordinary course of business as authorized pursuant to the Orders of this Court. The Carve-Out for the fees and expenses of the Debtor's counsel, turn-around management consultants and counsel for a Committee ("Professionals") shall be paid, but shall not be applied by any professional unless such fees and expenses (1) have been approved by order of this Court and are consistent with the budget attached as Exhibit A or have been consented to by Cedar, and (2) were not incurred for the actual filing and/or prosecution of any objection to the validity, extent, priority, protection and enforceability of the claims, liens and security interest granted to Cedar by the Debtor prior to the Petition Date. The Professionals' right to apply the aforementioned retainers to fees and expenses is subject to further order of this Court. Payment of the retainers is without prejudice to the Professionals seeking payment of additional compensation from Cash Collateral, after notice and hearing.

7. **Application of Proceeds.** Payments received by Cedar pursuant to the budget attached as Exhibit A shall be applied first to interest, charges and fees under the Pre-Petition Loan Documents, and then to principal under the Pre-Petition Loan Documents, to the extent permitted under 11 U.S.C. §506(b). The foregoing applications of funds shall be provisional and

the appropriateness of any application of funds shall be subject to final determination by the Court. All parties' rights with the respect to the appropriateness of such application are fully reserved.

8. **Right to Object.** An Official Committee of Unsecured Creditors if any, shall have sixty (60) days from the date of its appointment to file and serve upon the Debtor's counsel and Cedar's counsel an adversary proceeding contesting the validity, priority, extent or perfection of Cedar's Pre-Petition Liens and security interest in the Pre-Petition Collateral. All parties in interest other than the Official Committee of Unsecured Creditors, if any, shall have seventy-five (75) days from the Petition Date (except for Harris Bank, which shall have until January 15, 2006) to file and serve upon Cedar's counsel an adversary proceeding contesting the validity, priority, extent or perfection of Cedar's Pre-Petition Liens and security interest in the Pre-Petition Collateral. If there is a dispute regarding any of the foregoing matters, the Court's adjudication of such dispute shall bind the Debtor and its successors, including any subsequently appointed trustee. In the absence of the filing of such adversary proceeding, Cedar shall be deemed to have valid and perfected Pre-Petition Liens and security interests in the Pre-Petition Collateral, which determination, shall bind the Debtor and its successors, including a subsequently appointed trustee.

9. **Survival.** The provisions of this Order shall be binding upon and inure to the benefit of the Debtor and Cedar and their respective successors and assigns, retroactively to the Petition Date. The terms of this Order shall be valid and enforceable against any subsequent trustee for the Debtor in reorganization or otherwise. The liens and security interests granted herein shall survive conversion or dismissal of this case.

10. **Insurance.** The Debtor shall insure the Pre-Petition Collateral for the full insurable replacement value thereof, on substantially the same terms, provisions and conditions provided for in the Pre-Petition Loan Documents, with insurance companies acceptable to Cedar and naming Cedar as lost payee on its collateral on all such policies of insurance. The Debtor will provide Cedar with certificates of insurance evidencing the Debtor's compliance with the insurance requirements provided herein; and Cedar may purchase said insurance and charge the expense thereof to the Debtor if it fails to obtain the insurance as herein provided. Cedar, upon reasonable notice, has the right to audit and examine the Pre-Petition Collateral and the Debtor's books and records at any time during normal business hours.

11. **Plan of Reorganization or Other Subsequent Orders.** The validity, priority and the extent of the liens and security interests granted to Cedar pursuant to the Order shall not be modified, altered or affected in any manner including, without limitation, in a plan of reorganization, absent prior consent of Cedar or the entry of a subsequent Order by this Court, after hearing on notice to Cedar.

12. **Additional Duties of Debtor-in-Possession.** The Debtor shall furnish to Cedar weekly account receivable reports reflecting actual vs. projected cash flow and such other reports as Cedar may reasonably request from time to time.

13. **Events of Default.** The following events shall be Events of Default under this Order:

a. spending other than as allowed in the budget attached hereto as Exhibit A and as provided in this Order;

b. failure to comply with the Additional Duties of Debtor-in-Possession, as listed in paragraph 11 above;

c. Debtor's failure to comply with any of the other obligations imposed by this Order;

d. failure to pay adequate protection payments to Cedar as provided in the budget as set forth in Exhibit A hereto.

14. **Termination Date and Enforcement of Event of Default.** Cedar may, upon one business day's prior written notice in the case of a payment Event of Default and upon three (3) business days' prior written notice, in the case of a non-payment Event of Default, to the Debtor, the United States Trustee, and any statutory committee of unsecured creditors, terminate the Debtor's authority to utilize Cedar's Cash Collateral, if the Debtor has not cured such default prior thereto. Thereafter, Cedar may move the Court to terminate the automatic stay pursuant to Code §362(a), on an emergency basis with notice to the Debtor, any statutory committee of unsecured creditors and the United States Trustee, and obtain an Order of the Bankruptcy Court to permit Cedar to declare the principal of and accrued interest, fees and other liabilities to be due and payable and enforce its rights against any of its collateral. In any such hearing, the Debtor shall have the right to dispute the occurrence on any alleged default.

15. **Independent Actions.** The Debtor acknowledges that the promises and actions contained here are made and taken of its own free will and volition. In accepting the budget prepared by Debtor as Exhibit A and by taking any other action pursuant to this Order, Cedar asserts that it shall not have any liability to any third-party.

16. **Attorney's Fees for Counsel for Cedar.** Cedar shall be permitted to recover the fees, costs and expenses of counsel to the extent permitted under § 506(b) of the Code, after notice and hearing, subject to Court approval.

17. **Miscellaneous.**

a. **Force and Effect of Pre-Petition Documents: Conflicts**. Except as modified herein and subject to the other provisions of this Order and the Code, the Pre-Petition Loan Documents shall remain in full force and effect. To the extent there exists any conflict between the Motion, the Pre-Petition Loan Documents and the terms of this Order, this Order governs and controls.

b. **Modifications of the Stay**. The automatic stay of Code §362 is hereby modified with respect to Cedar to the extent necessary to effectuate the provisions of this Order.

c. **No Waiver**. This Order shall not constitute a waiver by Cedar of any of its rights under the Pre-Petition Loan Documents, the Code or other applicable law, including, without limitation: (1) its right to later assert that, notwithstanding the terms and provisions of this Order, its interest in the Pre-Petition Collateral lacks adequate protection within the meaning of Code §§362(d) or 363(e); or (2) its right to later assert claims under Section 507(b) of the Code. The failure by Cedar at any time or times hereafter to require strict performance by the Debtor (or by any trustee) of any provisions of this Order shall not waive, affect or diminish any right of Cedar thereafter to demand strict compliance and performance therewith. No delay on the part of Cedar in the exercise of any right or remedy of any provisions of this Order shall waive, affect or diminish any right of Cedar thereafter to demand strict compliance or performance therewith. None of the rights or remedies of Cedar under this Order shall be deemed to have been suspended or waived by Cedar unless such suspension or waiver is in writing, signed by duly authorized representative of Cedar and directed to the Debtor specifying such suspension or waiver.

d. **Responsible Person**. By accepting any budget submitted to it by the Debtor and by taking any other actions pursuant to this Order, Cedar asserts that it shall not be (1) deemed to

be in control of the operations of the Debtor; or (2) deemed to be acting as a "responsible person" with respect to the operations or management of the Debtor-in-Possession.

  e.  **Assignment.** Nothing in this Order shall limit the rights of Cedar to assign any of its rights, claims and obligation under the Pre-Petition Loan Documents.

REST OF PAGE INTENTIONALLY LEFT BLANK

    f.    **Order.** This Order shall be binding on all parties-in-interest in this case and their respective successors and assigns, including, without limitation, any trustee, except that any trustee shall have the right to terminate this Order after notice and hearing. If a Trustee terminates this Order, or if any of the provisions of this Order are hereby modified, vacated or stayed by subsequent order, such action shall not affect the priority, validity, and enforceability or effectiveness of any lien, security interest, priority or other benefit authorized hereby with respect to any cash collateral used prior to the effective date to the subsequent order (and all such liens, security interests, priorities and other benefit shall be governed in all respect by the original provisions by this Order). Except as otherwise explicitly set forth in this Order, no third parties are intended to be, or shall be, deemed to be third party beneficiaries of this Order.

DATED: **DEC 2 1 2005**    ENTER: _____

    Honorable Susan Pierson Sonderby
    U.S. Bankruptcy Judge

AGREED AND STIPULATED TO:

_____
Richard M. Bendix, Jr.
Counsel for Debtor

Schwartz, Cooper, Greenberger & Krauss
180 North LaSalle Street
Chicago, Illinois 60601
Telephone: (312)346-1300
Fax: (312)782-8416

_____
Karen R. Goodman
Counsel for Cedar Boulevard Capital

Shefsky & Froelich, Ltd
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60611
Telephone: (312)527-4000
Fax: (312)275-7570

f.  **Order.** This Order shall be binding on all parties-in-interest in this case and their respective successors and assigns, including, without limitation, any trustee, except that any trustee shall have the right to terminate this Order after notice and hearing. If a Trustee terminates this Order, or if any of the provisions of this Order are hereby modified, vacated or stayed by subsequent order, such action shall not affect the priority, validity, and enforceability or effectiveness of any lien, security interest, priority or other benefit authorized hereby with respect to any cash collateral used prior to the effective date to the subsequent order (and all such liens, security interests, priorities and other benefit shall be governed in all respect by the original provisions by this Order). Except as otherwise explicitly set forth in this Order, no third parties are intended to be, or shall be, deemed to be third party beneficiaries of this Order.

DATED:_____    ENTER:

_____
Honorable Susan Pierson Sonderby
U.S. Bankruptcy Judge

AGREED AND STIPULATED TO:

_____    *Karen R. Goodman* (signature)
Richard M. Bendix, Jr.              Karen R. Goodman
Counsel for Debtor                  Counsel for Cedar Boulevard Capital

Schwartz, Cooper, Greenberger & Krauss    Shefsky & Froelich, Ltd
180 North LaSalle Street                  111 East Wacker Drive
Chicago, Illinois 60601                   Suite 2800
Telephone: (312)346-1300                  Chicago, Illinois 60611
Fax: (312)782-8416                        Telephone: (312)527-4000
                                          Fax: (312)275-7570

Diagnostic Imaging Services, Inc.
13-week Cash Disbursement Budget - DIP
Consolidated (000's)

| Week Ending Budget/Actual | 10/22/05 Budget | 10/29/05 Budget | 11/05/05 Budget | 11/12/05 Budget | 11/19/05 Budget | 11/26/05 Budget | 12/03/05 Budget | 12/10/05 Budget | 12/17/05 Budget | 12/24/05 Budget | 12/31/05 Budget | 01/07/06 Budget | 01/14/06 Budget | Total Budget |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISBURSEMENTS :** | | | | | | | | | | | | | | |
| Operating Expenses | 6.5 | 6.5 | 4.8 | 4.8 | 4.7 | 6.3 | 9.4 | 4.4 | 4.4 | 5.9 | 4.9 | 4.4 | 4.4 | 71.5 |
| Insurance - General | - | - | 15.2 | - | - | 10.0 | - | - | - | - | 10.0 | - | - | 35.2 |
| Legal & Professional | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 1.4 | 18.1 |
| Legal & Professional - Chapter 11 | 175.0 | - | 25.0 | - | - | - | - | - | - | - | - | - | - | 200.0 |
| Maintenance/Service - Equipment & Bldg | 9.2 | 9.2 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 9.0 | 117.0 |
| Med / Surgical Supplies | 11.1 | 11.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 10.1 | 133.7 |
| PET Revenue Distribution | - | - | - | - | - | - | - | - | 6.4 | - | - | - | 17.5 | 23.9 |
| Marketing | 1.2 | 1.2 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 0.8 | 11.3 |
| Reading Fees | 18.8 | 18.8 | 15.8 | 13.4 | 13.4 | 13.4 | 15.9 | 13.4 | 13.4 | 13.4 | 13.4 | 15.9 | 13.4 | 192.2 |
| Payroll and Benefits | 88.5 | 45.9 | 108.9 | 0.3 | 52.1 | 25.9 | 70.9 | 0.3 | 68.3 | 0.3 | 85.4 | 0.3 | 65.9 | 653.3 |
| Utilities | 3.1 | 3.6 | 3.5 | 3.0 | 3.0 | 3.0 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 2.1 | 33.8 |
| Lease Payments | - | 40.8 | 64.7 | - | - | - | 105.4 | - | - | - | 40.8 | 64.6 | - | 316.3 |
| Building Lease | - | - | 18.2 | 14.5 | - | - | 14.9 | 5.6 | - | - | - | 14.9 | 5.6 | 73.7 |
| Capital Expenditures | - | - | - | - | - | 5.1 | - | 4.1 | - | 4.1 | 13.1 | - | - | 26.4 |
| **DISBURSEMENTS** | **314.9** | **138.5** | **277.0** | **57.4** | **134.5** | **85.0** | **240.0** | **51.2** | **115.9** | **47.1** | **191.0** | **123.6** | **130.2** | **1,906.4** |